UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

  -v-                                                      No. 06 Civ. 6483 (LTS)(RLE)

FREDERICK O'MEALLY, JASON N. GINDER,
MICHAEL L. SILVER and BRIAN P. CORBETT,

        Defendants.

-------------------------------------------------------x

## ORDER

Plaintiff Securities and Exchange Commission ("SEC" or "Plaintiff") brings this action against Defendants Frederick J. O'Meally ("O'Meally"), Jason N. Ginder ("Ginder"), Michael L. Silver ("Silver") and Brian P. Corbett ("Corbett") (collectively, "Defendants"), who were former securities brokers of Prudential Securities, Inc. ("PSI"), alleging violations of Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q, and Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, in connection with the "market timing" of purchases and sales of mutual fund shares to take advantage of valuation rules relating to such transactions, and alleged concealment of the identities of the defendant brokers and their clients in connection with such transactions after the mutual funds had directed them to cease and desist from engaging in such market timing practices. The Court has jurisdiction of this action pursuant to 15 U.S.C. §§ 77t(d), 77v(a), 78u and 78aa.

Defendants O'Meally and Silver move separately, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's complaint as against them. The Court has considered thoroughly the parties' submissions. For the following reasons, Defendants' motions to

dismiss the complaint are denied.

   On a motion to dismiss, the Court accepts the factual allegations in the complaint as true, and draws all reasonable inferences in the plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007). The complaint must plead "enough facts to state a claim to relief that is plausible on its face." Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). Furthermore, because an action alleging a violation of Section 10(b) or Section 17(a)(1) sounds in fraud,[1] the complaint "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. Proc. 9(b). The pleading standard for the scienter element of the cause of action is satisfied "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Ganino v. Citizens Utilities Co., 228 F.3d 154, 168-69 (2d Cir. 2000) (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).

*Material misrepresentation or omission*

   Defendant Silver moves to dismiss the complaint pursuant to Rule 12(b)(6), on the basis that the complaint fails to plead a misrepresentation or omission that was material. A misrepresentation or omission is "material" for purposes of Section 10(b) or Section 17(a) if there is

---

[1] See Aaron v. SEC, 446 U.S. 680, 695-96 (1980). To establish that Defendants have violated Section 10(b) and Rule 10b-5, Plaintiff must prove that Defendants: "(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." SEC v. Monarch Funding Corp., 192 F.3d 295, 308 (2d Cir. 1999). "Essentially the same elements are required under Section 17(a)(1)-(3) in connection with the offer or sale of a security, though no showing of scienter is required . . . under subsections (a)(2) or (a)(3)." Id.

a "substantial likelihood that the disclosure of the omitted fact[, or a correct representation,] would have been viewed by [a] reasonable [person] as having significantly altered the 'total mix' of information made available." Basic v. Levinson, 485 U.S. 224, 231-32 (1988) (citing TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976)).

Silver argues that Plaintiff's claims should be dismissed because the mutual funds' various attempts to prevent Defendants from trading were violations of Section 22(e) of the Investment Company Act of 1940, 15 U.S.C. § 80a-22(e) ("Section 22(e)"), which provides:

> No registered investment company shall suspend the right of redemption, or postpone the date of payment or satisfaction upon redemption of any redeemable security[2] in accordance with its terms for more than seven days after the tender of such security to the company or its agent designated for that purpose for redemption, except – [listing exceptions not relevant here].

15 U.S.C.A. § 80a-22(e) (West 1997). Therefore, Silver asserts, the alleged misrepresentations or omissions in reaction to the mutual funds' own illegitimate activities cannot be considered "material" for purposes of Section 10(b) or Section 17(a), presumably because a reasonable mutual fund would not have been seeking to violate the Act in the first place.

However, in numerous instances specifically described in the complaint, soon after a block was instituted, Defendants had the opportunity to, and did, sell off any remaining mutual fund shares they still held.[3] Therefore, construing the allegations of the complaint as true and drawing all

---

[2] The term "redeemable security" as used in Section 22(e) is defined as "any security . . . under the terms of which the holder, upon its presentation to the issuer . . . , is entitled . . . to receive approximately his proportionate share of the issuer's current net assets, or the cash equivalent thereof." 15 U.S.C.A. § 80a-2(32) (West 1997).

[3] For instance, in Paragraph 41(a) of the complaint, Plaintiff alleges that: "On June 7, 2001, Hartford [mutual fund] blocked one of Silver's accounts for Millennium [Silver's client]. On June 8, Silver's team sold nearly $1 million of a Hartford fund from the blocked account. On October 3, they bought $1.5 million of two Hartford funds for Millennium using two unblocked accounts." Several of the examples listed in Paragraph 41 follow the same pattern.

reasonable inferences in favor of Plaintiff, the "blocks" alleged in the complaint did not in fact suspend or delay Defendants' ability to redeem shares already held, and transactions were effected under circumstances that were misleading, as discussed further <u>infra</u>. Accordingly, Defendant Silver's Section 22(e) argument with respect to materiality is rejected and the Court denies Silver's motion to dismiss the complaint on that basis.

*Duty to disclose*

Defendant Silver also argues that the complaint fails to sufficiently plead that Defendants had a duty to reveal their true identities to the mutual funds when using the pseudonyms or alternative FA numbers in the manner described in the complaint. See <u>Chiarella v. U.S.</u>, 445 U.S. 222, 228 (1980) ("[O]ne who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so."). A duty to disclose under Sections 10(b) or 17(a) arises "where the parties share a fiduciary or similar relationship of trust and confidence," <u>Chiarella</u>, 445 U.S. at 228,[4] and may also arise "where a previous disclosure is or

---

[4] Citing cases which limit the circumstances in which a court may find that a fiduciary relationship exists, see, e.g., <u>U.S. v. Falcone</u> 257 F.3d 226, 234 (2d Cir. 2001) (in context of insider trading action, fiduciary relationship exists only when there is explicit acceptance of a duty, or where acceptance is implied from a relationship of trust and confidence); <u>Solutia, Inc. v. FMC Corp.</u>, 456 F. Supp. 2d 429, 447 (S.D.N.Y. 2006) (informal fiduciary relationships do not include parties participating in arms-length transactions); <u>U.S. v. Hunt</u>, 05 Cr. 395 (DAB), 2006 U.S. Dist. LEXIS 64887 (S.D.N.Y. Sept. 6, 2006) (rejecting Government's theory of guilt under Rule 10b-5 arising from fiduciary relationship because fiduciary relationship does not exist between arms-length traders in a market), Silver argues that the complaint does not sufficiently plead the existence of a fiduciary duty or relationship between the mutual funds and Defendants, and that Defendants therefore had no duty to disclose their true identities to the mutual funds after block letters were issued. However, Defendant cites no authority, nor do any of the cited cases suggest, that a Section 10(b) or 17(a) duty to disclose can be demonstrated <u>only</u> by establishing the existence of a fiduciary duty.

becomes inaccurate, incomplete or misleading." Burekovitch v. Hertz, No. 01-CV-1277 (ILG), 2001 WL 984942, *10 (E.D.N.Y. July 24, 2001); see also In re Time Warner Secs. Litig., 9 F.3d 259, 267 (2d Cir. 2001) (duty to disclose arises with respect to financial projections if failure to disclose renders previous projection misleading). Under the factual circumstances pleaded in the complaint, and drawing all reasonable inferences in favor of Plaintiff, the complaint sufficiently pleads plausibly the existence of a duty to disclose on the part of Defendants. Although Silver repeatedly emphasizes the fact that mutual funds do not require buyers or sellers to reveal their identities, it is at least plausible that, after the mutual funds explicitly notified Defendants that the mutual funds no longer wanted Defendants to trade shares in their respective funds and actively sought to block Defendants' trading activities, there was a duty on the part of Defendants to disclose their identities should they choose to use different account names or FA numbers in the future. Failing to reveal their true identities would have rendered misleading their subsequent representations as to their identities and affiliations in connection with new trades. See, e.g., SEC v. Druffner, 353 F. Supp. 2d 141, 148 (D. Mass. 2005) (finding duty to disclose adequately pleaded in similar market timing case involving the use of multiple account pseudonyms). Therefore, the complaint sufficiently pleads the existence of a duty to disclose, and Silver's motion to dismiss the complaint is denied to the extent that Silver argues otherwise.

Plaintiff has sufficiently stated a Section 10(b) and Section 17(a) claim and has also met the pleading requirements with respect to scienter. The complaint, using numerous detailed examples, recounts how Defendants had the ability to create and use almost limitless different account names and FA numbers, and therefore had the opportunity to trick mutual funds into accepting trades the funds would not have otherwise accepted had they known who the broker effectuating the transaction was. The complaint also explains how Defendants were able to earn

commissions and fees off of each trade, and identifies the specific clients, account names, FA numbers, and dollar amounts for each allegedly fraudulent transaction. Therefore, the complaint pleads the existence of both motive and opportunity as well as strong circumstantial evidence of conscious misbehavior, such that Rule 9(b)'s pleading requirements with respect to scienter are satisfied. The complaint also contains sufficient allegations connecting these allegedly fraudulent activities with the purchase or sale of securities.

Defendant Silver's motion to dismiss is, accordingly, denied.

*Due process*

Defendant O'Meally's motion papers argue that dismissal is warranted because the SEC brought this action without providing O'Meally a meaningful opportunity to be heard by the SEC as to why an action should not be brought against him. In moving to dismiss on this basis, O'Meally relies principally upon an affidavit of his lawyer describing the events O'Meally alleges amounted to a denial of his right to due process. (See Aff. of Jonathan Harris, dated Dec. 15, 2006.) The SEC, in turn, proffers an affidavit disputing some of O'Meally's factual averments. (See Decl. of Beth Lehman, dated Jan. 16, 2007.)

On a motion to dismiss, the Court is not permitted to consider factual allegations outside the complaint, and O'Meally does not argue, nor does the Court conclude, that any of the extrinsic evidence proffered by O'Meally constitute documents or other materials referenced by, relied upon by, or integral to the complaint. See Broder v. Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005). Therefore, on that basis alone, O'Meally's motion to dismiss the complaint should be denied, because it rests entirely upon allegations not contained in the complaint.

Nonetheless, even if all the averments in O'Meally's proffered affidavit were accepted

as true for purposes of this motion practice, there would still be no basis for O'Meally's due process argument. The Court is not persuaded that it must recognize a liberty interest in not being sued in a civil action. Cf. Wellman v. Dickinson, LHIW, Inc., 79 F.R.D. 341, 350 (S.D.N.Y. 1978) (rejecting request to dismiss case on basis that SEC allegedly abused its investigative powers, as it would "establish a rule that would require dismissal of an SEC enforcement action even in the face of overwhelming evidence of liability."). Nor does O'Meally cite any authority that persuades the Court that it should go to the extraordinary length of dismissing a civil action against a defendant solely because the government did not give sufficient notice or an opportunity for a potential defendant to be heard on the issue of whether a civil action should be brought against him in the first place.

Defendant O'Meally's motion to dismiss the complaint is denied, without prejudice to O'Meally's ability to raise due process arguments in connection with future motion practice.

## CONCLUSION

For the foregoing reasons, Defendant Silver's and Defendant O'Meally's motions to dismiss the complaint are denied. The Clerk of Court is respectfully requested to terminate Docket Entries Nos. 19 and 23.

SO ORDERED.

Dated: New York, New York
September 3, 2008

_____
LAURA TAYLOR SWAIN
United States District Judge